We'll now hear the case of Bandler v. Town of Woodstock. Good morning, Your Honors. Good morning. So I understand that Mr. Bandler, you will be, of course, arguing. You have two minutes in rebuttal. And then Kavash Shahi will be arguing for the Town of Woodstock, and Benjamin Battles for the State of Vermont. Mr. Bandler, you may proceed. Good morning. I have a number of quick points, and I'm happy to answer any questions the court may have. Contrary to defendant's argument, plaintiff argues that the correct standard of review by this court is de novo. The standard of review of a district court's denial of leave to amend is generally abuse of discretion, but when the denial is based upon interpretation of law, such as futility, which is the situation here, the review is de novo. Defendants have repeatedly argued a decision denying leave to amend was correct, because such an amendment would be futile as to the Article III standing in sovereign immunity. Second, contrary to the State and Vermont's position, any sovereign immunity that the State of Vermont might have been entitled to has been waived. A complete discussion of this point is seen in both the plaintiff's briefs and the district court decision as well. Third, in arguments including that plaintiff lacked Article III standing because of any damages he sustained were self-inflicted, the district court and defendants misunderstand the nature and background of this matter and as a result come to an erroneous result. The court's attention is drawn to the Traffic Appeal Docket Sheet and Judgment Sheet found as the last page of the plaintiff's initial brief, which confirms that this is not the typical case where an appellant obtains a favorable verdict and then moves for a cause. This distinction is critical. Rather, the State, absent warning to plaintiff, dismissed the underlying ticket, resulting in an immediate dismissal of the appeal, not awarding cause, ending the jurisdiction of the State Appellate Court, and leaving plaintiff without a venue to recover cause. Plaintiff's injury was not caused by himself, but rather by the State Appellate Court and it is very much not of his own doing. Plaintiff's denied amended complaint was specifically intended to correct the situation. Finally, in conclusion, plaintiff is not asking his court to weigh the facts and then award cause. Rather, he is respectfully asking his court to rule in a way that allows him to pursue that relief from a court below. I don't know if there are any questions or concerns the court may have. Thank you, Judge Kastman. I was wondering if you could help me better understand your argument, and if I'm misunderstanding the argument, please let me know, that you could not have secured reimbursement of the filing fee by requesting cause because, as you put it, and I quote, U.S. District Court no longer had jurisdiction to consider it. My question is, could you explain to me why you would request cause from federal court rather than a state court? The original court that heard the matter was the State District Court. That court ruled in favor of the state. However, I, plaintiff, moved for a trial de novo. That negated everything that the state court had done and moved jurisdiction upstream to the federal court. That left, when the court dismissed the ticket, dismissed the appeal, it left no venue or avenue to recover cost. It did not have jurisdiction, and the state court below, unless the unappelled court ruled to the contrary, also had no jurisdiction. Thank you. Let me ask you this other question. When you look at Rule 54-D-1 of the Vermont Rules of Civil Procedure, the rule states, and I quote in pertinent part, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise specifically directs. And so my question to you is, looking at the superior court's order, where do you see that the court otherwise specifically directs that you may not be reimbursed for the filing fee? The document which I referred the court to, the traffic appeal docket sheet and judgment sheet, specifically provides for a reimbursement of fees. The court chose to not award them at that point. Thank you. Judge Sack? No further questions. Judge Nardini? No, thank you very much. Okay, Mr. Bandler, you'll have two minutes in rebuttal after we hear from your adversaries. We'll first hear from the town of Woodstock. Good morning, Your Honor. This is Kaveh Shahi for the town of Woodstock and the village of Woodstock. May it please the court. I want to zero in on the standing issue and the cost, the $120 filing fee for the de novo. And I'm having trouble following Mr. Bandler's argument. He had every right to file for costs when the matter before the superior court, the state superior court was dismissed and could have obtained costs. It is not at all unusual for dismissals to be entered without the court commenting on costs, the parties then move for costs. And as the question suggested under the rules of procedure, Rule 54, the parties is permitted to seek costs unless the court for some reason disallows that. That's also reflected in the statute as well. The case was initially filed in state court. It was removed to federal court. So I'm really not understanding Mr. Bandler's argument. Let me ask just a quick question. When it was filed, was the plaintiff or was Mr. Bandler represented at that time rather than prosecuted? Your Honor, if your question is when this lawsuit was initially filed, yes. He was represented by two sets of attorneys. And he was represented throughout the case until the court dismissed the matter. You mean until it was on appeal? Until it was on appeal, yes, Your Honor. He was pro se in the traffic court. But Mr. Bandler, I've had other matters with him. I think he's not your typical pro se. He has no allegation here that for some reason he was precluded. I'm not suggesting that. I just want to know which end was up. Thank you. Yes, thank you. In any event, so not only has he failed to establish some loss of property or damage for standing, but also we pointed out in our brief that he was given a ticket for 40 miles per hour in a zone that was posted at 25. He claims there is a contradictory provision in the local ordinance that makes it 35. That provision was removed two years earlier. Unfortunately, there was a mix-up happens with small towns that was overlooked by the state's attorney. And he thought that this was a contradiction and had the thing dismissed. But, in fact, this ordinance, this offending provision that says 35 miles per hour was removed two years earlier. In any event, the ticket was for 40 miles per hour. And since Mr. Bandler's speed was not adjudicated, and he alleges that his speed was not determined in the proceedings below, and since he would not have standing if his speed was over 35 miles per hour, effectively he cannot demonstrate injury except through this case if it's remanded. And it's clear that for the purpose of Article 3 standing, the injury cannot be established in the course of the pending litigation. It has to be an existing de facto injury. And there is none that Mr. Bandler can establish here. So we submit that respectfully. Is it your view that Mr. Bandler's driving, whether it was at 35 or 40 miles per hour, it already occurred, right, on June 20, 2015? Correct. So how does this qualify as post-complaint litigation conduct? Because his speed, he disputes he was going at 40 miles per hour. In the amended complaint, he says he was going under 35, although he attaches the citation, which is 40. So if this case were to proceed, then the federal court would have, through a jury, determined what his actual speed was. If that speed turns out to be over 35, he clearly has no standing here. So he would have to establish that not only the law was that he could go up to 35, but that his speed was under 35. Therefore, that injury has not been adjudicated and is intended to be adjudicated in this case. And we think the law is clear that for Article III standing, you have to have injury before you come to court and not use the proceedings at hand to establish your injury, which is what he's intending to do. The only adjudication we have is that he was convicted in the traffic case, which he then appealed de novo. So the only adjudication we have is that a traffic judge found that he was speeding and convicted him of the citation for 40 miles per hour. But beyond that... I'm sorry. I didn't have any questions until just this last line of argument. I don't understand it at all. You're suggesting that there's no Article III standing if someone alleges an injury, but it hasn't been conclusively proved and would need to be litigated? Isn't that always the case by definition with every single lawsuit? You allege an injury, and then you have to prove it. If you say, you hit me with a car, and you say, well, there's no adjudication that said I hit you with a car, so you've got no standing, that makes no sense.  He's alleging constitutional injuries in this case. But in order to have standing, he has to show that he meets the threshold requirement for injury for his standing. So I get that, and I get the argument that if he could have gotten his money back, then he's got no injury. But I don't understand this business about the speeding. How that has anything to do with anything. If Mr. Banda had an adjudication below that he was traveling 35 or less, or under 35, then he would have standing to say that, assuming, again, the fee issue, putting that aside, is our contention, then I think he could say he was ticketed wrongfully. If he was traveling in excess of 35, then he has no standing, even if it's correct that the speed there was 35. Are you saying that if he could prove, if he could prove, I'm trying to understand your argument. Are you saying that if he could prove in federal court that he was driving at 15 miles an hour, he would have standing? Your Honor, my point is that federal court is not traffic court. He needed to have that adjudicated below to have the standing to come. Although he didn't come to federal court, he went to state court. But to be in federal court, to have standing, he needs to already have established that he was traveling 35 or lower for his claim. Why would he need to have established it, assuming it's somehow relevant? Why wouldn't it be adequate for him to allege it? To me, the speed he was going was either relevant or not relevant. And if it's relevant somehow, then why isn't it enough to allege it? Because the proceedings below is what he claims violated his rights. And so therefore, at this point, it's entirely speculative whether that happened or not because we don't know his speed. All right, I have no further questions. That's fine. That's fine. Thank you. Thank you. Thank you, Mr. Shahi. We'll now hear from Mr. Battles. Thank you, Your Honors, and may it please the court. Benjamin Battles on behalf of the state of Vermont. The state agrees that amendment would be futile because Mr. Bandler lacked standing to pursue his claims. And we agree with the district court that there's no standing here because there's no dispute that the traffic citation was dismissed, that Mr. Bandler does not allege any collateral consequences, and he had a right to recover his costs, and he does not allege that he pursued that right. I would like to briefly address why amendment would also be futile as to any claim against the state, and that is because any such claim would be barred by the state's sovereign immunity. First, I would like to note that the proposed amended complaint purported to name State Treasurer Beth Pierce as a defendant. In his reply brief, Mr. Bandler states that he now has no reason to pursue his claims against Ms. Pierce. So that claim appears to have been withdrawn. With respect to any other claim against the state, it appears that Mr. Bandler is seeking to recover this appeal fee that he paid, this court fee, and that's his only remaining claim against the state. Our position is that its standalone damages claim, whether it's phrased for recovery of a fee, is barred by the state's general sovereign immunity, which cannot be waived unless it's expressly done by the Vermont legislature by statute. And the only potentially relevant waiver here is the Vermont Torts Claim Act, under which the state can be sued for negligent acts or omissions of its employees, but we think that waiver is inapplicable for at least three reasons. First, because Mr. Bandler has not alleged that any state employee acted negligently. Second, there is no private analog for a claim against the state in these circumstances. Under the Torts Claims Act, the state can only be held liable in the same manner and to the same extent as a private person, but accepting revenue from a traffic conviction is a distinctly government function. And finally, the state has expressly retained its immunity for any claim for damages caused by the fiscal operations of any state office or department, and we believe that reservation of immunity also covers the claim here. So unless there are any questions from the court, we'll rest on a brief. Judge Tasman, you've addressed the questions I would have asked. Judge Stack? No further questions. Judge Nardini? No questions here either. Thank you. Thank you, both. Mr. Bandler, you'll have two minutes in rebuttal. As to the argument made on behalf of Woodstock Town and Village, Rule 54, which was read during the argument, expressly says, except as disallowed by the court. I submit that the order, which I've made repeated reference to, is a specific disallowance, so that that covers, negates that argument. I suggest that the argument on behalf of Woodstock is contrary to the most basic law that this is a motion to dismiss that was filed by Woodstock. On a motion to dismiss, the facts alleged in the complaint, in this case an amended complaint, must be accepted as true. Woodstock argues that they should not, because no proof had been done. This is contrary to most basic law. The function of the federal court, the district court, was not to adjudicate the underlying merits of the claims, but merely the requested relief was a remand to the appropriate state court to allow for such an adjudication. I have heard several times the broad conclusion... We have one minute left, just so you know. Thank you. I'm almost at the end. ...about obtaining relief. What has not been brought up by either of the other parties is how they suggest that relief and in which court, based upon what statute or court rule permitted, other than by appellate order, how such a request for relief could be made. This statement has been broadly made, but there is no specific... There is no remedy other than to appeal the state district court's denial of costs on the sheet, which I've referred the court to. Finally, as to the issue of waiver, there is a statute, which is referred to in my brief, which allows the state to impose certain costs. That statute must be interpreted in both directions. If the state has the power to impose fees, it has the power to have fees abated as well, which, in fact, is a waiver of sovereign immunity. Thank you. Thank you. Thank you all for your arguments. The court will reserve decision. The final case on the calendar, Macho v. Barr, is on submission. The clerk will adjourn the court report. Court stands adjourned.